NO. 07-07-0437-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 27, 2009

_____

RICHARD W. DEMPS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH  DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-410574; HONORABLE CECIL PURYEAR, JUDGE

_____

**OPINION**

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Richard W. Demps, was convicted by a jury of the offense of sexual assault.[1]  Upon a finding of true to an enhancement alleging a prior sexual assault

---

[1]Tex. Penal Code Ann. § 22.011(a)(2)(C)(Vernon Supp. 2008).

conviction, an automatic life sentence was imposed.[2]  By two points of error, Appellant

contests the factual sufficiency of the evidence and the adequacy of the jury charge.

Addressing those issues in reverse order, we affirm.

**Background**

The indictment in this cause alleged that on or about September 16, 2005, in

Lubbock County, Texas, Appellant intentionally and knowingly caused the sexual organ of

T.C., a child who was then and there younger than 17 years of age, to contact Appellant's

sexual organ.  Prior to trial, the State filed a notice that it intended to use extraneous

offenses and evidence of other crimes at trial including evidence related to multiple sexual

assaults perpetrated by Appellant against T.C. that allegedly occurred on or about April 1,

2005 through September 20, 2005, in Lubbock and Terry Counties.[3]

At trial, David Cruz, an officer for the Brownfield Police Department, testified that

T.C. gave him a sworn statement stating that Appellant engaged in sexual intercourse with

her in Lubbock, and later in Brownfield on September 16, 2005.  Max Walden, T.C.'s foster

parent, and Kelly Whitman, an employee of Lubbock's Rape Crisis Center, also testified

that T.C. told them Appellant engaged in sexual intercourse with her in Lubbock and

---

[2]Tex. Penal Code § 12.42(c)(2)(B)(ii) (Vernon 2003).

[3]*See* Tex. Code Crim. Proc. Ann. art. 38.37 §§1(1), 2(2) (Vernon Supp. 2008).

Brownfield during the weekend of September 16. Mario Gonzalez, an officer with the Lubbock Police Department testified that, after meeting with T.C. on September 18, 2005, he believed T.C. had been sexually assaulted in Lubbock.

T.C. herself testified that, in 2005, she was living in Lubbock with her foster parents, Max and Hazel Walden. She often spent time at a friend's house across the street where she met Appellant. Appellant, who was then over thirty years of age, was aware T.C. was only fourteen. Approximately a week after meeting, Appellant and T.C. began meeting secretly at her friend's house every other night to engage in sexual intercourse. After Appellant moved, they continued to meet secretly at other persons' houses in order to engage in sexual intercourse.

While intending to arrange another secret meeting with Appellant, T.C. asked her foster parents for permission to spend the night at her friend's house on Friday, September 16, 2005. After arriving at her friend's house, she called Appellant and made arrangements for him to pick her up. She then told her friend's mother that she would be leaving with a relative. Appellant, along with his friends, Roderick Reed and Matthew Gonzales, and their children subsequently picked T.C. up in Reed's car. They drove to a friend's house and stayed approximately one hour.

3

T.C. then traveled to Brownfield with Appellant and his friends where she stayed overnight with Appellant at his father's house. On Saturday morning, she decided to stay in Brownfield and had sexual intercourse with Appellant that afternoon. Later that day, she went to her aunt's house where she spent the night. On Sunday, her aunt contacted her foster parents and they drove to Brownfield to pick her up.

At trial, T.C. testified that she lied when she told her foster parents, police officers, and the rape crisis worker that she had sexual intercourse with Appellant in Lubbock on September 16. She testified that she lied because she was afraid of "what she was going to face."

Whitman testified that, on September 18, T.C. underwent a physical examination and specimens were taken from her body and clothing. The specimens were later tested against specimens taken from Appellant. David Young, a forensic serologist for the Department of Public Safety, testified that Appellant's DNA was a match for DNA found in the specimens taken from T.C.'s body and clothing.

Appellant produced a number of witnesses who testified that when he and T.C. were at his friends' houses in Lubbock and Brownfield, they were never alone or the circumstances were such that they were not permitted to engage in sexual intercourse.

Other witnesses testified that T.C. appeared to be between seventeen and twenty-two years of age, and represented she was nineteen years old.

At the jury charge hearing, Appellant's counsel objected to the State's "extraneous offense" charge asserting that the charge was an attempt to convict Appellant on extraneous offenses rather than the offense alleged in the indictment, *i.e.,* that Appellant had sexual contact with T.C. in Lubbock *on or about September 16, 2005.* (Emphasis added). The trial court overruled the objection and issued the following instructions:

> The defendant, RICHARD DEMPS, stands charged by indictment with the offense of sexual assault, alleged to have been committed in Lubbock County, Texas, on or about September 16, 2005.
>
> * * *
>
> 4. You are instructed that the State is not bound by the date alleged in the indictment but to proof that the offense was committed any time prior to the return of the indictment that is within the period of limitations. You are instructed that the statute of limitation for the offense of sexual assault of a child is ten years from the 18th birthday of the victim of the offense.
>
> * * *
>
> 5. Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about September 16, 2005, in Lubbock County, Texas, as alleged in the indictment, the defendant, RICHARD DEMPS, did then and there intentionally or knowingly cause the sexual organ of [T.C.], a child who was then and there younger than seventeen (17) years of age, to contact the sexual organ of the defendant, then you will find the defendant guilty of the offense sexual assault, and so say by your verdict.
>
> * * *

5

6. You are further charged that if there is any evidence before you in this case tending to show that the defendant herein committed offenses other than the offense alleged against him in the indictment, you cannot consider said testimony for any purpose unless you find and believe, beyond a reasonable doubt, that the defendant committed such other offenses, if any were committed; and if you find and believe beyond a reasonable doubt from such testimony that other offenses were committed, you may then consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, and for no other purpose.

\* \* \*

11. Your verdict, if any, will be by unanimous vote.

Thereafter, the jury found Appellant guilty of the offense of sexual assault as charged in the indictment. On October 22, 2007, Appellant filed a motion for a new trial asserting that the verdict was contrary to the law and evidence. The trial court denied Appellant's motion and this appeal followed.

**Discussion**

### I.    Jury Charge Error

By his second issue, Appellant contends the trial court erred by including an instruction (Paragraph 4 above) that allowed the jury to convict him for any offense preceding the indictment and not barred by limitations, where the State was not compelled to make an election as to the specific, discrete incident it was relying upon for conviction. Although multifarious in his presentation, Appellant's real complaint is that the trial court

did not require the State to make an election, even though Appellant failed to either request an election or object to the failure of the State to make an election.[4]  Appellant, however, further contends that by allowing the jury to convict without tying the prosecution to a specific incident, the trial court deprived him of his constitutional right to a unanimous verdict.  Although Appellant's objection at trial did not specifically complain about a deprivation of his constitutional right to a unanimous verdict, we will nevertheless liberally construe his objection as encompassing that complaint.[5]  Tex. R. App. P. 33.1(a) and 38.9.

When analyzing a jury-charge issue, we first determine if error occurred and, if so, we then conduct a harm analysis.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005).  Where the error alleged is of a constitutional dimension, we must also determine if it is subject to harmless error review.  *See generally Phillips v. State,* 193 S.W.3d 904, 913 (Tex.Crim.App. 2006).  If the error is subject to harmless error review, an appellate court must reverse the judgment of conviction unless the court determines beyond a

---

[4]Because Appellant did not request the State elect the act upon which it would rely for conviction, he waived his right to such an election.  *O'Neal v. State,* 746 S.W.2d 769, 771 n. 3 (Tex.Crim.App. 1988).  That said, a failure to request an election does not eliminate Appellant's constitutional right to a unanimous jury verdict.  *Ngo v. State,* 175 S.W.3d, 738, 748 (Tex.Crim.App. 2005).

[5]Appellant's objection at trial was as follows: "Your Honor, the problem with this paragraph [the 'on or before' instruction] is that I believe the State is attempting to convict my client on these extraneous offenses rather than the offense for which we are before the Court.  And I would like, in addition to this Paragraph 6, an instruction from the Court telling the jury that they are not to convict my client merely on those extraneous offenses . . . ."

7

reasonable doubt that the error did not contribute to the conviction. Tex. R. App. P. 44.2(a).

The indictment charged Appellant with intentionally and knowingly engaging in sexual contact with a child in Lubbock County on September 16, 2005. At trial, the State put on evidence in support of the September 16 sexual assault, but also elicited testimony from T.C. that Appellant had sexually assaulted her in a like manner at various times and locations in Lubbock in the weeks prior to September 16. Although the State may present evidence or obtain a conviction by proof of similar criminal acts that occurred "on or about" the date alleged in the indictment, *Sledge v. State*, 953 S.W.2d 253, 255, 259 (Tex.Crim.App. 1997), the danger that a verdict will not be unanimous "arises when a multitude of incidents are presented to the jury and the State is not required to elect." *Phillips*, 193 S.W.3d at 913.[6]

Although T.C.'s foster parent, police officers, and a rape crisis worker testified that T.C. told them she was sexually assaulted in Lubbock on September 16, T.C. denied her prior statements and testified generally regarding multiple assaults during the weeks preceding the September 16 offense. Instruction No. 4 contained in the court's charge expanded the "on or about" September 16 offense alleged in the indictment to include the

---

[6]Although the trial court did issue an extraneous offense instruction, such an instruction may not abate a jury's confusion concerning which alleged offense is relied upon by the State. *Phillips v. State*, 130 S.W.3d 343, 353 n.11 (Tex.App.–Houston [14th Dist.] 2004), *aff'd,* 193 S.W.3d 904 (Tex.Crim.App. 2006).

preceding assaults. Although the jury charge did contain an instruction requiring a unanimous verdict, it did not contain any additional instructions requiring unanimity as to one distinct offense.[7] Conceivably then, the jury could have believed that their verdict of guilty or not guilty need only be unanimous on the general offense of sexual assault. Accordingly, we conclude that, taken as a whole, the jury charge contained error because it failed to contain an instruction that the jurors must be unanimous in deciding which one (or more) of the offenses proved at trial were committed by Appellant.

Having found error, the next question before this Court is whether that error is subject to a harmless error analysis. The Texas Court of Criminal Appeals has held that all errors, with the exception of certain federal constitutional errors labeled as "structural," are subject to a harmless error analysis. *Cain v. State,* 947 S.W.2d 262, 264 (1997). "A 'structural' error 'affect[s] the framework within which the trial proceeds, rather than simply an error in the trial itself' and 'render[s] a trial fundamentally unfair.'" *Jordan v. State,* 256 S.W.3d 286, 290 (Tex.Crim.App. 2008)(quoting *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) and *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). Here, the trial court's failure to include an additional

---

[7]Under the Texas Constitution, in order for a jury to return a verdict of guilty, the jury must reach a unanimous verdict on which single, specific criminal act the defendant committed. Tex. Const. art. V, § 13; *Landrian v. State,* 268 S.W.3d 532, 535 (Tex.Crim.App. 2008); *Ngo,* 175 S.W.3d at 748.

9

instruction requiring unanimity as to one distinct offense is subject to a harmless error analysis. *Phillips v. State,* 193 S.W.3d at 913.

We must now determine whether that error was harmless. Under the facts of this case, our analysis requires us to reverse unless we find beyond a reasonable doubt that the error did not contribute to the conviction. Tex. R. App. P. 44.2(a). In determining whether the failure to include an additional distinct offense unanimity instruction is harmless beyond a reasonable doubt, an appellate court should consider: (1) the degree to which the jury might have been confused as to which offense the State was intending to prosecute; (2) the extent to which the charged offense was distinct; (3) the extent to which the non-charged extraneous offense or offenses were distinguishable; (4) the presence or absence of evidence corroborating or contradicting the charged offense; (5) the overall strength of the State's case; and (6) the emphasis placed on the non-charged offense or offenses by the prosecution or defense.

Here, the indictment expressly described the September 16 offense. The State spoke only of this offense in their opening statement, elicited detailed evidence from a number of witnesses as to the September 16 offense in its case-in-chief, and emphasized this offense in its summation. Forensic evidence supported the commission of an offense on or near September 16 and the only other possible source of that DNA evidence was an extraneous offense that was clearly distinguishable from the charged offense because it

10

allegedly occurred in another county. While the extraneous offenses were referenced generally in the State's summation, that reference was for the purpose of establishing Appellant's method of operation and/or his previous relationship with T.C.[8] and they were not argued as an alternative or additional offense. Moreover, the September 16 offense was the only offense expressly set forth in the jury charge.

We find that, because the State focused its attention solely on one particular occurrence, it would have been clear to both Appellant and the jury that the State was relying on the September 16 occurrence, and only that occurrence, to convict. See *Hulsey v. State,* 211 S.W.3d 853, 857 (Tex.App.–Houston [14th Dist.] 2004, no pet.); *Phillips,* 130 S.W.3d at 354-55. Moreover, there is no reasonable basis for believing that the jury could not have convicted Appellant on the basis of T.C.'s prior statements made shortly after the September 16 offense to, at least, three different persons, especially considering the forensic evidence which tied Appellant to the offense and the circumstantial evidence indicating Appellant had engaged in a pattern of sexual assaults against T.C. that were similar, if not identical, to the September 16 offense. Accordingly, the evidence related to the September 16 offense was clearly sufficient, beyond a reasonable doubt, in and of itself to support a finding of guilt, and was certainly the act relied upon by the State to support the conviction. *See Dixon v. State,* 201 S.W.3d 731, 735 (Tex.Crim.App. 2006).

---

[8]*See* Tex. Code Crim. Proc. Ann. art. 38.37, § 3 (Vernon Supp. 2008).

11

Especially in light of the general instruction requiring unanimity, we find the trial court's failure to include a further instruction requiring unanimity as to *one distinct incident* did not contribute to the conviction. Tex. R. App. P. 44.2(a). *See Phillips*, 193 S.W.3d at 914. Point of error two is overruled.

## II.     Factual Sufficiency

When conducting a factual sufficiency review, we examine all the evidence in a neutral light and determine whether the trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *Roberts v. State,* 220 S.W.3d 521, 524 (Tex.Crim.App. 2007), *cert. denied,* ___ U.S. ___,128 S.Ct. 282, 169 L.Ed.2d 206 (2007); *Watson v. State*, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006).[9] We give deference to the fact finder's determination when supported by the record, and cannot reverse a conviction unless we find some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the verdict. *Watson,* 204 S.W.3d. at 417. The criminal verdict will be set aside "only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence so strong that the standard of proof beyond a reasonable doubt could not have been met." *Garza v. State,* 213 S.W.3d 338, 343 (Tex.Crim.App. 2007). In addition, the fact finder is entitled to judge the credibility of

---

[9]An appellant may challenge the factual sufficiency of the evidence for the first time on appeal in a criminal case tried to a court or a jury obviating the need to consider whether such challenges are waivable. *See Washington v. State*, 127 S.W.3d 197, 203 (Tex.App.–Houston [1st Dist.] 2003, pet. dism'd).

the witnesses and may choose to believe all, some or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).

Any inconsistency between T.C.'s statements made shortly after the assault to her foster father, police officers, and rape crisis worker, and her subsequent testimony at trial went to her credibility. That Appellant and T.C. engaged in sexual intercourse in Lubbock on September 16 at a friend's house is also supported by evidence that Appellant met her several times at other persons' homes for the purpose of having sexual intercourse and then T.C. returned as quickly as possible to avoid detection by her foster parents. Moreover, when T.C. called Appellant to arrange the September 16 meeting, she initially planned to remain in Lubbock. Based upon this evidence, the jury could have reasonably believed that Appellant sexually assaulted T.C. in Lubbock on September 16 even though T.C.'s trial testimony was inconsistent with her earlier statements. *See, e.g., In re A.B.,* 133 S.W.3d 869, 873-74 (Tex.App.–Dallas 2004, no pet.); *Washington,* 127 S.W.3d at 205.

Our evaluation of the evidence "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App. 1996), *cert. denied,* 522 U.S. 832, 118 S.Ct. 100, 39 L.Ed.2d 54 (1997). To the extent Appellant claims the evidence is factually insufficient because T.C.'s prior statements were not credible or the jury gave insufficient weight to the testimony of Appellant's friends, we hold that the evidence in support of the jury's verdict

13

was not so weak as to render the verdict clearly wrong or manifestly unjust. Appellant's first point of error is also overruled.

## Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Publish.