

## NUMBER 13-22-00588-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

PEDRO OSCAR CASTILLO JR.
A/K/A PEDRO CASTILLO,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                                  Appellee.

---

## ON APPEAL FROM THE 107TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña
Memorandum Opinion by Justice Peña**

Appellant Pedro Oscar Castillo Jr., also known as Pedro Castillo, appeals his convictions for continuous sexual abuse of a young child, *see* TEX. PENAL CODE ANN. § 21.02(b)(1), and indecency with a child. *See id.* § 21.11(a)(1). A jury found Castillo guilty as to both counts and sentenced him to fifty years' imprisonment as to count one and

fifteen years' imprisonment as to count two, which sentences the trial court ordered to run concurrently. In three issues, Castillo argues that (1) the evidence was legally insufficient to support his convictions; (2) the trial court erred by failing to require the State to elect the acts upon which it sought conviction, violating his right to a unanimous verdict; and (3) the trial court erred by allowing the State to bolster the testimony of the complaining witness by admitting the report from the Sexual Assault Nurse Examiner (SANE). We affirm in part, and reverse and remand in part.

## I.    BACKGROUND

In a two-count indictment, Castillo was charged with continuous sexual abuse of a young child, *id*. § 21.02(b)(1), and indecency with a child. *Id*. § 21.11(a)(1). Count one alleged that Castillo committed continuous sexual abuse against his biological daughter, D.C., a child younger than 14 years of age, from on or about the "1ST DAY OF SEPTEMBER, 2009 through the 1ST DAY OF JANUARY, 2016."[1] The indictment alleged that Castillo committed the following predicate acts of sexual abuse during this time period: (1) indecency with a child by touching D.C.'s genitals, *see id*. § 21.11(a)(1), (c)(1); "AND/OR" (2) indecency with a child by causing D.C. to touch Castillo's genitals with her hand, *see id*. § 21.11(a)(1), (c)(2); "AND/OR" (3) aggravated sexual assault by causing the mouth of D.C. to contact Castillo's sexual organ. *See id*. § 22.021(a)(1)(B)(v). Count two alleged that Castillo separately committed indecency with a child against D.C. on July 1, 2016 (when D.C. would have been fifteen), by causing D.C. to touch Castillo's genitals. *See id*. § 21.11(a)(1), (c)(2).

_____

[1] D.C. was born in June of 2001; the time period alleged begins when she was eight years old and ends when she was fourteen years old.

2

The evidence adduced at trial shows that Castillo shares two children with A.G.: D.C. and her brother A.C. Castillo and A.G. were separated for many years but were amicable and shared custody of their children. Castillo came to the attention of law enforcement in the Spring of 2020 when D.C., who was on spring break from college at the time, first informed her mother about the abuse. A.G. then summoned Castillo to his mother's house, where A.G. confronted Castillo with the allegations, which Castillo denied.

After making an initial police report at Castillo's mother's house, A.G. and D.C. followed up the next day at the Cameron County Sheriff's Office, where they provided statements to investigator Eric Flores, who testified at trial. D.C. was then forensically interviewed by SANE Laura Dominguez. The SANE report, which was admitted into evidence, provides as follows:

> Patient states, "I was sexually assaulted when I was little. I was little, like 6 or so and then I would distance myself from him in middle school and in high school. I didn't hang out with him as much so he wouldn't do anything. It was my father, Pedro Oscar Castillo. The last time I saw him was when I placed the report on him, like March 11th. I remember he would make me give him hand jobs [and] blow jobs and he would make me get undressed. He would make me grab his penis with my hand and he would make me put his penis in my mouth. I remember when I was little, I fell asleep on the couch and I woke up to him touching me down there (patient indicates female sexual organ by pointing) with his finger and his hand. It was inside my clothes. When I got injured in July, I was asleep on the recliner and I woke up with his hand inside my shirt here (patient indicates right flank region by pointing) and he was moving his hand to go down. I woke up and got mad at him. It happened in like September or October of 2019. I remember he would make me get on my knees and he would put his penis on my back and make the motion, but it would not be inside me. He would come on my back and sometimes my chest. He would tell me not to say anything to anyone."

D.C. testified that after A.G. and Castillo separated, Castillo lived at his mother's

house, then with his then-wife Adriana Solis, and then with D.C., A.G., and A.C. as a "roommate." According to D.C., she was abused by Castillo at his mother's house, at the apartment D.C. shared with Solis, and at her family home, all located in Brownsville, Texas. D.C. testified that the first instance of abuse she could remember occurred at Castillo's mother's house. D.C. testified that Castillo "had me put my mouth on his penis until he came, and I spit it out on the—I don't remember if it was a t-shirt or a paper towel or whatever he had there." D.C. was asked, "how many times did he have you do that where he would have you put your mouth on his penis?" D.C. responded, "[t]oo many times," and affirmed that it happened more than two times. D.C. also testified that at her grandmother's house, while she was naked "he had his penis on [her] back and would just go back and forth." She recalled that during this abuse, Castillo took away her cellphone and turned it off. D.C. stated that Castillo rubbed his penis on her back "[m]ore than once."

D.C. testified that, at Solis's apartment, Castillo had her lay down with her back on the bed and her head hanging from the bed. Castillo then stood over D.C.'s head and "he told [her] to put [her] mouth on his genitals." D.C. testified that on a separate occasion in Solis's apartment, Castillo had D.C. watch pornography with him "to learn what they're doing."

D.C. testified that when she first moved into the family home, Castillo woke her up in the middle of the night and "felt his hand under my clothes on my—on my vagina, and I was just shocked. I didn't know what to do. . . . [He] was rubbing." D.C. testified that this occurred "more than once." On a separate occasion at the family home, Castillo had D.C. get on her knees and put her mouth on his penis. D.C. testified that another time, while

4

Castillo was working as a security guard at the jail, he opened the curtain while she was showering and "told [her] to just let him look." D.C. also recalled that Castillo would also "[v]ery often" have her position her naked body into a "diamond" so that he could "just look."

Although D.C. could not recall when the abuse stopped, she testified that she stopped seeing Castillo during her sophomore year of high school in 2017. She testified that she started disconnecting with Castillo around the age of fifteen, when she did not want him at her quinceañera. D.C. responded "yes" when asked by the State whether "this continued [] up until you were 15 when you said you started realizing it and disconnecting yourself from him?" D.C. also recalled that around October or December of 2019, Castillo touched her while she was asleep on a recliner recovering from ankle surgery. D.C. then slapped Castillo, and Castillo "started apologizing and crying."

Throughout her testimony, D.C. could not provide any specific dates on which the acts of abuse had occurred. As the State noted in its opening, D.C. is "not going to remember the exact dates. This is not going to happen. There was way too many occurrences and it happened long ago, so don't hold that against her." As to the time frame alleged, the State offered testimony establishing that Castillo had been employed at the Cameron County Jail from September 18, 2009, through August 26, 2011. The State established that D.C. did not have a cellphone until she was in middle school, when she would have been "12, 13[,] and 14." Solis, who confirmed that D.C. would sometimes spend the night at her apartment, testified that she and Castillo did not live in an apartment together until after they were married in 2006. Solis and Castillo divorced in 2011, after which Castillo and D.C. did not stay in contact.

5

Before the jury was instructed, Castillo filed a "Motion for Special Requested Instruction in the Jury Charge Under the Texas Criminal Procedure Art. 36.15," wherein he requested that the jury charge not include language sanctioning non-unanimity as to the predicate acts to sustain a conviction for continuous sexual abuse. The trial court denied the motion, and the jury returned a guilty verdict as to both counts. The jury assessed punishment at fifty years' imprisonment as to count one and fifteen years' imprisonment as to count two, and the trial court ordered the sentences to run concurrently. This appeal followed.

## II.   SUFFICIENCY OF THE EVIDENCE

By his first issue, Castillo argues that "there was never any testimony of when the alleged sexual acts occurred," and thus the State could not satisfy the elements of either count one or two.

### A.    Standard of Review & Applicable Law

"Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence." *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021) (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)). Evidence is legally sufficient if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Joe v. State*, 663 S.W.3d 728, 731—32 (Tex. Crim. App. 2022) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under a legal sufficiency review, we view the evidence in the light most favorable to the verdict, while recognizing that "[t]he trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts." *Id.* at 732; *see Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (noting that "the

6

reviewing court is required to defer to the jury's credibility and weight determinations").

We measure the evidence produced at trial against the essential elements of the offense as defined by a hypothetically correct jury charge. *David v. State*, 663 S.W.3d 673, 678 (Tex. Crim. App. 2022) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). The "law" as "authorized by the indictment" includes the statutory elements of the offense as modified by the charging instrument. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

A hypothetically correct charge would instruct the jury that, "[t]o obtain a conviction for continuous sexual abuse of a child, the State must show that the defendant committed at least two acts of sexual abuse against a child younger than 14 years of age during a period of at least 30 days' duration." *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021) (citing TEX. PENAL CODE ANN. § 21.02(b)). "[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." TEX. PENAL CODE ANN. § 21.02(d). But, the proof must establish "there is at least 28 days between the day of the first act of sexual abuse and the day of the last act of sexual abuse." *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Further, the uncorroborated testimony of a child victim alone is sufficient to support a conviction for a sexual offense. TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1); *see Villalon v. State*, 791 S.W.2d 130, 134

7

(Tex. Crim. App. 1990) (concluding child victim's testimony alone was sufficient to establish the element of penetration beyond a reasonable doubt).

## B.     Discussion

As to count one, the State was only required to prove that all the predicate acts of abuse occurred when D.C. was younger than 14 and that at least two of them occurred during a period that is 30 days or more in duration. *See Ramos*, 636 S.W.3d at 651. Thus, to affirm conviction of count one, we must determine whether there is sufficient evidence in the record to support the jury's determination that at least two instances of sexual abuse occurred before D.C. was 14 and that at least two instances of abuse are separated by 28 days. *See Smith*, 340 S.W.3d at 48. We must also keep in mind that the State indicted the three predicate sexual abuse offenses in the alternative, which was reflected in the jury charge, and thus any two instances of the following conduct during the appropriate time period would suffice: Castillo touching D.C.'s genitals (indecency with a child), Castillo causing D.C. to touch his genitals (indecency with a child), or Castillo causing D.C.'s mouth to contact his sexual organ (aggravated sexual assault). *See David*, 663 S.W.3d at 678; *Curry*, 30 S.W.3d at 404.

The SANE report admitted into evidence provides that D.C. stated that she was "sexually assaulted" when she was "6 or so," and that Castillo "would make [her] give him hand jobs [and] blow jobs and he would make [her] get undressed." D.C. testified that Castillo rubbed her vagina under her clothes when she "first moved" into the family home. When asked how long her family has lived at the family home, D.C. responded "[a]bout 10, 12 years-ish." D.C. testified that she was 21 at the time of her testimony. She would thus have been at least nine years old when she "first moved" into the family home. D.C.

8

testified that this abuse occurred "more than once."

Without considering the evidence of any other acts, we find that D.C.'s testimony outlined above is sufficient to sustain a conviction for count one, as a jury could have reasonably concluded that Castillo at least committed sexual abuse against D.C. when she was six years old, and again when she was nine to eleven years old. *See Ramos*, 636 S.W.3d at 651; *see also* TEX. PENAL CODE ANN. § 21.02(b), (d); TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1).

As to count two, D.C. testified that Castillo "more than once" rubbed his penis on her back while she was naked. She further testified that Castillo would take away her cellphone when this occurred, and that she first got a cellphone when she was in middle school, when she was "12, 13[,] and 14." D.C. further testified generally that the abuse continued until she was fifteen years old when she did not invite Castillo to her quinceañera. This evidence was sufficient to show that Castillo caused a part of D.C.'s body to touch his genitals when she was younger than 17 years of age. See *Ramos*, 636 S.W.3d at 651; *see also* TEX. PENAL CODE ANN. § 21.11(a)(1) (stating that a person commits indecency with a child if he "causes the child to engage in sexual contact"), (c)(2) (stating that "sexual contact" includes "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person" if "committed with the intent to arouse or gratify the sexual desire of any person"); TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1).[2] We overrule Castillo's first issue.

---

[2] We note that this conduct would not have constituted any of the continuous sexual abuse predicate offenses as alleged in count one of the indictment because the relevant indecency predicate offense alleged that Castillo caused D.C. "to touch the genitals of [Castillo] with [her] hand." *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(2). Count two, on the other hand, does not require proof that D.C. used her hand to touch Castillo's genitals. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

### III.   JURY NON-UNANIMITY

By his second issue, Castillo argues that the trial court erred in failing to order the State to elect which acts it would rely upon for conviction on count two. At trial, Castillo requested a special instruction and argued that the jury charge violated his right to a unanimous verdict. We construe Castillo's claim as a claim of jury-charge error that deprived him of his constitutional right to a unanimous verdict. *See Demps v. State*, 278 S.W.3d 62, 67 (Tex. App.—Amarillo 2009, pet. ref'd).

**A.   Standard of Review & Applicable Law**

"When one particular act of sexual assault is alleged in the indictment, and more than one incident of that same act of sexual assault is shown by the evidence, 'the State must elect the act upon which it would rely for conviction.'" *Owings v. State*, 541 S.W.3d 144, 150 (Tex. Crim. App. 2017) (quoting *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim. App. 1988)). "Once the State rests its case[-]in[-]chief, upon a timely request by the defense, the trial court must order the State to make an election." *Owings*, 541 S.W.3d at 150 (citation omitted). "A defendant's decision to elect is purely strategic and may be waived or forfeited." *Cosio v. State*, 353 S.W.3d 766, 775 (Tex. Crim. App. 2011); *see also* George E. Dix & John M. Schmolesky,43 TEX. PRAC. SERIES: CRIM. PRAC. & PROC. § 42:14 (3d ed.) ("This means that the trial court has no obligation to sua sponte order the State to elect or to act—as in instructing the jury—as if an election had been made."). Even where an appellant fails to request the State elect the acts upon which it would rely for conviction, "failure to request an election does not eliminate [an] [a]ppellant's constitutional right to a unanimous jury verdict." *Demps*, 278 S.W.3d at 67 n.4 (citing *Ngo v. State*, 175 S.W.3d 738, 748 (Tex. Crim. App. 2005)).

10

Where jury charge error violates an appellant's right to a unanimous jury verdict, "the proper analysis is provided by Rule of Appellate Procedure 44.2(a)." *Phillips v. State*, 193 S.W.3d 904, 913 (Tex. Crim. App. 2006) (citing TEX. R. APP. P. 44.2(a) ("If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.")); *see Williams v. State*, 273 S.W.3d 200, 225 (Tex. Crim. App. 2008) ("Preserved jury charge error is evaluated under *Almanza*'s 'some harm' standard unless we determine that the error is constitutional in nature, in which case the 'beyond a reasonable doubt harmless' standard would apply.").

## B.     Count One

As to count one, Castillo's argument is without merit because there is no jury unanimity requirement as to the predicate acts constituting continuous sexual abuse of a child. *See* TEX. PENAL CODE ANN. § 21.02(d) ("If the jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed."). "[I]t is sufficient to allow a jury to select from a menu of possible bad acts and agree that a defendant committed two of them without the concomitant requirement that the jurors be shown to all concur as to which of the acts did occur." *Hill v. State*, 455 S.W.3d 271, 276 (Tex. App.—Texarkana 2015, pet. ref'd). In other words, the gravamen of the continuous sexual abuse statute is "not the individual bad acts, but . . . the commission of any combination of any two of those acts during the requisite time period." *Id*.

Accordingly, to the extent that Castillo argues that the jury charge for count one

was erroneous, or that his conviction for continuous sexual abuse of a young child violates his right to a unanimous jury verdict, such arguments are without merit. *See Navarro v. State*, 535 S.W.3d 162, 166 (Tex. App.—Waco 2017, pet. ref'd) (collecting cases which "have reviewed the issue and determined that [§ 21.02(d)] does not violate the constitutional right to jury unanimity"); *Render v. State*, 316 S.W.3d 846, 857–58 (Tex. App.—Dallas 2010, pet. ref'd) (rejecting appellant's argument that the continuous sexual abuse statute is unconstitutional because it does not require jury unanimity as to predicate acts, noting that § 21.02 "is a statute that creates a single element of a 'series' of sexual abuse" and "does not make each 'violation' (act of sexual abuse) a separate element of the offense that needs to be agreed upon unanimously").

## C.   Count Two

As to count two, a conviction for indecency with a child may violate the jury unanimity requirement

> when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions. Each of the multiple incidents individually establishes a different offense or unit of prosecution. The judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented.

*Cosio*, 353 S.W.3d at 772 (citations omitted).

The State introduced evidence of multiple acts of indecency with a child during its case-in-chief. Illustrative here is the following argument by the State during its closing:

> Now, Count Two is indecency with a child by contact. Here are the elements, on or about July 1st, 2016 in Cameron County, Texas, the Defendant did commit the offense of indecency causing child to touch his genitals—the Defendant's genitals with the intent to arouse sexual desire. Now, we heard [D.C.] testify to this, multiple hand jobs on many occasions. *We're just alleging one here. It just has to be on or about July 1st, 2016, the*

*Defendant touching—the child touching [Castillo]'s genitals, the hand jobs, and also him rubbing his penis on her back and coming on her back.* She told you the way that felt. She told you how it made her feel. With the intent to arouse sexual desire, he came, so that means we meet that element.

(Emphasis added.)

Here, although the jury charge includes a generic unanimity instruction as to the "verdict," the jury charge contains no similar instruction requiring jury unanimity as to the underlying criminal conduct for count two. *See id* at 774 ("[W]e conclude that the court of appeals was correct in holding that the charges in this case allowed for the possibility that the jury rendered non-unanimous verdicts. . . . [T]he standard, perfunctory unanimity instruction at the end of each charge did not rectify the error. The jury may have believed that it had to be unanimous about the offenses, not the criminal conduct constituting the offenses.").

These facts fit squarely within the scope of prior caselaw finding jury-charge error where the State presented evidence that a defendant committed the offense alleged on multiple separate occasions. For example, in *Francis*,

[a]ppellant was charged with one count of indecency with a child in a single paragraph indictment. The State presented evidence of four distinct acts of the alleged indecency with a child. Each of these acts occurred at a different time and date, with two acts involving an improper touching of the victim's breasts and two acts involving an improper touching of the victim's genitals.

36 S.W.3d at 122. The *Francis* court concluded that "the jury charge given in appellant's case created the possibility of a non-unanimous jury verdict" because it was "possible that six members of the jury convicted appellant on the breast-touching offense (while the other six believed he was innocent of the breast-touching) and six members convicted appellant on the genital-touching offense (while the other six believed he was innocent of

the genital-touching)." 36 S.W.3d at 125; *see Cosio*, 353 S.W.3d at 774 ("The jury could have relied on separate incidents of criminal conduct, which constituted different offenses or separate units of prosecution, committed by Cosio to find him guilty in the three remaining counts upheld by the court of appeals."). Likewise, here, six jurors could have convicted Castillo based on the rubbing of his penis on D.C.'s back, while another six jurors convicted him because of D.C.'s touching of his genitals. *See id.*

Having found jury-charge error, we next determine whether this error was harmless and "our analysis requires us to reverse unless we find beyond a reasonable doubt that the error did not contribute to the conviction." *Demps*, 278 S.W.3d at 68 (citing Tex. R. App. P. 44.2(a)).

> In determining whether the failure to include an additional distinct offense unanimity instruction is harmless beyond a reasonable doubt, an appellate court should consider: (1) the degree to which the jury might have been confused as to which offense the State was intending to prosecute; (2) the extent to which the charged offense was distinct; (3) the extent to which the non-charged extraneous offense or offenses were distinguishable; (4) the presence or absence of evidence corroborating or contradicting the charged offense; (5) the overall strength of the State's case; and (6) the emphasis placed on the non-charged offense or offenses by the prosecution or defense.

*Demps*, 278 S.W.3d at 68.

The indictment in this case alleged Castillo committed indecency with a child "on or about the 1ST DAY OF JULY, 2016." As to the evidence, the State's case rests mostly on statements made by D.C., but D.C. testified to multiple acts of indecency with a child as alleged in the indictment, occurring over the course of at least a decade. There was no evidence that any particular act of indecency occurred on or about July 1, 2016. As the State explained in response to Castillo's motion for directed verdict, the date alleged

14

in count two was used because that was near the date of her fifteenth birthday, not because any particular offense occurred on that date:

> Your Honor, she was stating that all of these events happened up until the age she was 15, and so that's the date that she was 15 around that date, July 1st of 2016, so she did say that in her testimony.
> . . . .
> She would have been 15 at that time, and she did state on the stand yesterday that these acts that he committed, rubbing his genitals on her back, that would go to Two and also her giving him, as she described, a hand job, putting her hand on his penis. So she said that those acts did occur up until she was the age of 15.

Thus, the jury may have been confused as to which offense the State was relying on for count two. *See id.* Finally, the State emphasized this ambiguity at closing when it argued to the jury that, as to count two, it presented evidence of "multiple hand jobs on many occasions . . . and also him rubbing his penis on her back and coming on her back."

Considering the record before us, we cannot find beyond a reasonable doubt that error did not contribute to Castillo's conviction as to count two. *See* TEX. R. APP. P. 44.2(a); *cf. Demps*, 278 S.W.3d at 69 ("We find that, because the State focused its attention solely on one particular occurrence, it would have been clear to both Appellant and the jury that the State was relying on the September 16 occurrence, and only that occurrence, to convict. . . . Accordingly, the evidence related to the September 16 offense was clearly sufficient, beyond a reasonable doubt, in and of itself to support a finding of guilt, and was certainly the act relied upon by the State to support the conviction."). We sustain Castillo's first issue as to count two.

### IV.    IMPROPER BOLSTERING BY ADMITTING SANE REPORT

In his third issue, Castillo argues that the State improperly bolstered D.C.'s credibility by admitting the SANE report into evidence.

15

**A.      Standard of Review & Applicable Law**

We review the trial court's exclusion of evidence under an abuse of discretion standard. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily or unreasonably. *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Therefore, we will uphold a trial court's ruling on admissibility if it is within the "zone of reasonable disagreement." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) (quoting *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

Generally, hearsay is not admissible unless permitted by statute, the rules of evidence, or by some other rule prescribed under statutory authority. TEX. R. EVID. 802. Once a hearsay objection is made, the proponent of the evidence must establish an exception that would make the evidence admissible despite its hearsay character. *Taylor v. State*, 268 S.W.3d 571, 578-79 (Tex. Crim. App. 2008). Rule 803(4) provides that statements made for the purpose of medical diagnosis or treatment are an exception to the hearsay rule. TEX. R. EVID. 803(4). Pursuant to that rule, a statement is not hearsay if it "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." *Id.*

The admissibility of statements under Rule 803(4) depends upon the proponent of the evidence showing that (1) the declarant was aware that the statement was made for the purposes of medical diagnosis or treatment and that proper diagnosis or treatment was dependent upon the veracity of the statement, and (2) the statement offered is

pertinent to treatment. *Taylor v. State*, 268 S.W.3d 571, 589, 591 (Tex. Crim. App. 2008); *Prieto v. State*, 337 S.W.3d 918, 921 (Tex. App.—Amarillo 2011, pet. ref'd).

The Texas Court of Criminal Appeals has noted that "it seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that [a medical professional]'s questions are designed to elicit accurate information and that veracity will serve their best interest." *Taylor*, 268 S.W.3d at 589. "This explains the almost universal tendency of courts under these circumstances to assay the record, not for evidence of such an awareness [that veracity is in a patient's best interest], but for any evidence that would *negate* such an awareness, even while recognizing that the burden is on the proponent of the hearsay to show that the Rule 803(4) exception applies." *Id.* (emphasis in original). "Thus, unlike statements made to non-medical professionals, which require affirmative evidence in the record on the issue of veracity, courts can infer from the record that the victim knew it was important to tell a SANE the truth in order to obtain medical treatment or diagnosis." *Franklin v. State*, 459 S.W.3d 670, 677 (Tex. App.—Texarkana 2015, pet. ref'd) (collecting cases).

## B. Discussion

Castillo argues the SANE report introduced into the record contained "no evidence of trauma and was simply introduced to have [Dominguez] narrate and bolster D.C.'s accusation to the jury." However, this is not borne out by the record. Dominguez testified that the purpose of the SANE exam is "[t]o assess and treat if there's any injuries or any exposure to injuries." In additional to any verbal components, the SANE exam included a "head-to-toe exam." Dominguez testified that for delayed outcries, "it's not often" that she collects or finds any physical evidence when conducting an examination. As to D.C. in

17

particular, Dominguez noted that she would not expect to find signs of physical trauma "[b]ased on her history, it was digital penetration and it was oral penetration that she gave on the history, and it was delayed outcry, that if there were any injuries, they would have bene healed by now." Dominguez also explicitly denied that she was providing any opinion about D.C.'s veracity during the following exchange on cross-examination:

| | |
|---|---|
| [Defense counsel]: | And now do you think that these histories are honest, that the complainants or whoever is relating this information to you have been truthful? |
| [Dominguez]: | My job as a nurse is to take their history as they give it to me and treat them based on that. |
| [Defense counsel]: | So they could just be lying through their teeth and you really wouldn't know it? |
| [Dominguez]: | That's not my job to decide. They come in—if they come in with chest pain, we treat them for chest pain. If they come in with abdominal pain—so if they come in for abuse, we see them for that as well. |

Castillo has failed to show that the SANE exam was inadmissible under Rule 803(4) and points us to no evidence negating the presumption of veracity applicable to questioning by medical professionals. *See Taylor*, 268 S.W.3d at 589. Reviewing the record, we conclude that it supports a finding that D.C. understood the need to be truthful during the SANE examination. *See Franklin*, 459 S.W.3d at 678. Accordingly, the trial court did not abuse its discretion in admitting the SANE report into evidence, as the statements contained therein were admissible under Rule 803(4). *See id.*; *see also Shell v. State*, No. 03-08-00505-CR, 2009 WL 1364353, at *2–3 (Tex. App.—Austin May 15, 2009, no pet.) (mem. op., not designated for publication) (rejecting appellant's argument

18

that SANE's testimony amounted to improper bolstering of complainant because she "never suggest[ed] that the jury should deduce [from her testimony] that 'the defendant was the individual who committed the act'"); *Bellard v. State*, No. 05-21-00633-CR, 2023 WL 1097769, at *7 (Tex. App.—Dallas Jan. 30, 2023, pet. ref'd) (mem. op., not designated for publication) (rejecting appellant's argument that SANE's expert testimony improperly bolstered complainant's testimony and that the "nurse's testimony repeated [complainant]'s outcry" because the SANE "affirmatively stated that it was not her job to determine whether or not a child was abused"). We overrule Castillo's third issue.

## V. CONCLUSION

We affirm the trial court's judgment as to count one. We reverse the judgment as to count two and remand to the trial court for proceedings consistent with this opinion.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
26th day of August, 2024.